## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

| | |
|---|---|
| **In re: Motion to Compel Compliance with Subpoena Directed to Non-Party Circinus, LLC** | |
| BROIDY CAPITAL MANAGEMENT, LLC and ELLIOTT BROIDY, <br>       Plaintiffs, <br><br>    v. <br><br> NICOLAS D. MUZIN, JOSEPH ALLAHAM, GREGORY HOWARD, and STONINGTON STRATEGIES LLC, <br>       Defendants. | Misc. Action No.: _____ <br><br> Underlying Litigation: <br><br> United States District Court for the District of Columbia Civil Action No.: 19-cv-00150-DLF |

### MEMORANDUM IN SUPPORT OF NICOLAS D. MUZIN, STONINGTON STRATEGIES LLC, AND GREGORY HOWARD'S MOTION TO COMPEL NON-PARTY CIRCINUS LLC'S COMPLIANCE WITH RULE 45 SUBPOENAS

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

BACKGROUND ............................................................................................................... 3

    A.    The Stonington Subpoena ..................................................................... 3

    B.    Howard's Subpoena ............................................................................... 5

    C.    Circinus Has Yet to Produce A Single Document ................................. 5

LEGAL STANDARD ........................................................................................................ 5

ARGUMENT .................................................................................................................... 7

    I.    CIRCINUS'S UNTIMELY OBJECTIONS TO THE STONINGTON SUBPOENA ARE WAIVED. ............................................................................................. 7

    II.    CIRCINUS'S BOILERPLATE, NONSPECIFIC OBJECTIONS TO BOTH SUBPOENAS ARE LIKEWISE WAIVED ............................................................................ 10

    III.    CIRCINUS IMPERMISSIBLY LIMITS ALL OF ITS RESPONSES TO INFORMATION "CONCERNING THE HACKING." ............................................................... 12

    IV.    CIRCINUS REFUSES TO PRODUCE DOCUMENTS REGARDING BROIDY'S ILLEGAL ACTIVITY ............................................................................ 14

    V.    CIRCINUS REFUSES TO PRODUCE DOCUMENTS REGARDING BROIDY'S DAMAGES. ......................................................................................... 19

    VI.    CIRCINUS REFUSES TO PRODUCE ANY DOCUMENTS FROM BEFORE DECEMBER 2017. ................................................................................ 21

CONCLUSION ................................................................................................................ 22

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alderson v. United States*,
  718 F. Supp. 2d 1186 (C.D. Cal. 2010) ...............................................................16

*Alexander v. F.B.I.*,
  194 F.R.D. 316 (D.D.C. 2000)...............................................................6, 7, 9, 11

*Ashghari-Kamriani v. United Servs. Auto. Ass'n*,
  No. 2:15-cv-478, 2016 WL 11642670 (E.D. Va. May 31, 2016)...........................10

*Bartnicki v. Vopper*,
  532 U.S. 514 (2001).............................................................................................16

*Broidy Cap. Mgmt., LLC v. Benomar*,
  18-CV-06615 (S.D.N.Y. Dec. 21, 2018) ...............................................................1

*Broidy Cap. Mgmt., LLC v. Muzin*,
  1:19-cv-00150 (D.D.C. Feb. 7, 2022) ...............................................................1, 2

*Broidy Cap. Mgmt., LLC v. Qatar*,
  No. 18-CV-2421-JFW(EX), 2018 WL 6074570 (C.D. Cal. Aug. 8, 2018)..............1

*Broidy Capitol Mgmt., LLC v. Allaham*,
  18-MC-240 (KBF) (S.D.N.Y. June 6, 2018) .........................................................9

*Broidy v. Glob. Risk Advisors LLC*,
  No. 1:19-CV-11861 (MKV), 2021 WL 1225949 (S.D.N.Y. Mar. 31, 2021)............1

*Cappetta v. GC Servs. Ltd. P'ship*,
  No. 3:08CV288, 2008 WL 5377934 (E.D. Va. Dec. 24, 2008)..............................10

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*,
  334 F.3d 390 (4th Cir. 2003) .................................................................................6

*Castle v. Jallah*,
  142 F.R.D. 618 (E.D. Va. 1992) .............................................................................5

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  No. 14-CV-251-SC, 2015 WL 12952688 (N.D. Cal. Jan. 16, 2015)......................13

*Clark v. Trans Union, LLC*,
  No. 3:15cv391, 2017 WL 11504623 (E.D. Va. Mar. 1, 2017) ...................10, 11, 12

*Cont'l Cirs. LLC v. Intel Corp.*,
    435 F. Supp. 3d 1014 (D. Ariz. 2020) ...................................................................16

*Deutsche Bank Nat'l Tr. Co. v. Fegely*,
    No. 3:16cvl47, 2020 WL 201048 (E.D. Va. Jan 13, 2020) ...........................6, 10, 12

*Dickerson v. District of Columbia*,
    No. 09-2213, 2019 WL 6910043 (D.D.C. Dec. 19, 2019)......................................20

*Eshelman v. Puma Biotechnology, Inc.*,
    No. 7:16-CV-18-D, 2018 WL 1702773 (E.D.N.C. Apr. 6, 2018) ..........................19

*Goodman v. Genworth Fin. Wealth Mgmt.*,
    881 F. Supp. 2d 347 (E.D.N.Y. 2012) ...................................................................16

*Juno Therapeutics, Inc. v. Kite Pharma, Inc.*,
    No. CV 17-7639-SJO-KSX, 2019 WL 3069009 (C.D. Cal. Apr. 29, 2019) ............9

*McCoy v. Sw. Airlines Co.*,
    211 F.R.D. 381 (C.D. Cal. 2002) .............................................................................8

*Nat'l Cmty. Reinvestment Coalition v. NovaStar Fin., Inc.*,
    No. 07-861, 2009 WL 10719757 (D.D.C. 2009) ...................................................19

*Pete v. Big Picture Loans, LLC*,
    Nos. 3:17-CV-461, 3:18-CV-406, 2020 WL 3979662 (E.D. Va. July 14, 2020)....................16

*Pietrangelo v. Refresh Club, Inc.*,
    No. 18-cv-1943, 2021 WL 2156504 (D.D.C. May 26, 2021)...............6, 13, 14, 17

*Primrose v. Castle Branch, Inc.*,
    No. 7:14-CV-235-D, 2016 WL 917318 (E.D.N.C. Mar. 8, 2016).........................19

*RLI Ins. Co. v. Conseco, Inc.*,
    477 F. Supp. 2d 741 (E.D. Va. 2007) ....................................................................11

*Ronaldson v. Nat'l Ass'n of Home Builders*,
    2020 WL 3259226, at *4 (D.D.C. June 3, 2020) ...................................................11

*Spendlove v. RapidCourt, LLC*,
    No. 3:18-cv-856, 2019 WL 7143664 (E.D. Va. Dec. 23, 2019)............................12

*Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*,
    242 F.R.D. 1 (D.D.C. 2007)...................................................................................12

*Thomas v. Starz Ent., LLC*,
    No. 15-CV-09239, 2017 WL 11628086 (C.D. Cal. May 26, 2017) .......................16

*U.S. v. Concord Mgmt. & Consulting LLC*,
   347 F. Supp. 3d 38 (D.D.C. 2018) ..........................................................................16

*United States v. Broidy*,
   1:20-cr-210 (D.D.C. Oct. 23, 2020) ........................................................................15

*Williams v. Big Picture Loans, LLC*,
   303 F. Supp. 3d 434 (E.D. Va. 2018) ................................................................7, 8, 9

**Statutes**

Foreign Agents Registration Act of 1938, 22 U.S.C. § 611 *et seq.* ..................................15, 16, 18

**Other Authorities**

8 Charles Alan Wright, et al., Federal Practice & Procedure (2021)...............................19

Fed. R. Civ. P. 26 ..........................................................................................................3, 5, 10

Fed. R. Civ. P. 34 ..............................................................................................................5, 12

Fed. R. Civ. P. 45 ................................................................................................... *passim*

Movants Nicolas D. Muzin and Stonington Strategies, LLC (collectively, "Stonington"), along with Gregory Howard ("Howard" and together "Movants"), respectfully request that this Court compel Circinus LLC ("Circinus") to comply with subpoenas for documents issued to it under Federal Rule of Civil Procedure 45.

## INTRODUCTION

Movants are named defendants in an action pending in the U.S. District Court for the District of Columbia. *See Broidy Capital Management, LLC et al. v. Nicholas Muzin et al.*, No. 1:19-cv-00150, First Am. Compl. ("FAC"), ECF No. 18-2 (D.D.C. Apr. 2, 2019) (the "Underlying Action"). A copy of the underlying complaint is attached as Exhibit A. The Underlying Action represents the fourth attempt by Elliott Broidy to pursue claims against those he alleges were involved in a widespread conspiracy, supposedly orchestrated by the State of Qatar ("Qatar"), to hack his computer and disseminate his emails to journalists.[1] Broidy's FAC alleges that the resulting media coverage of his leaked emails falsely disparaged his character, exposed his supposed trade secrets, and ultimately damaged both his public standing and his business relationships. Broidy claims that he was targeted because of his outspoken, and supposedly civic-minded, opposition to Qatar.

According to the FAC, the alleged hacking operation occurred from December 2017 through early 2018. The relevant events of this lawsuit, however, began well before then, in at

---

[1]     The three other suits Broidy has filed to date have been dismissed. *See Broidy v. Glob. Risk Advisors LLC*, No. 1:19-cv-1186, 2021 WL 1225949, at *10 (S.D.N.Y. Mar. 31, 2021); *Broidy Cap. Mgmt., LLC v. Benomar*, No. 18-cv-06615, ECF No. 56 (S.D.N.Y. Dec. 21, 2018); *Broidy Cap. Mgmt., LLC v. Qatar*, No. 18-cv-2421, 2018 WL 6074570, at *11 (C.D. Cal. Aug. 8, 2018), aff'd, 982 F.3d 582 (9th Cir. 2020); *Broidy Cap. Mgmt., LLC v. Qatar*, No. 18-cv-2421, 2018 WL 9943551, at *9 (C.D. Cal. Aug. 22, 2018); *Broidy Cap. Mgmt., LLC v. Qatar*, No. 18-cv-2421, 2018 WL 9943552, at *11 (C.D. Cal. Aug. 16, 2018).

least 2016 and early 2017, when many of the leaked emails were sent and the illegal activity discussed in them occurred.

Broidy's leaked emails—and the many articles written about them—provide a window into a vast operation of undisclosed foreign lobbying, corruption, and other illegal activity.  At the center of this operation were Broidy and his web of corporate entities, including Circinus, a private security and intelligence firm purchased by Broidy in 2015.  Broidy used these entities— particularly Circinus—to pursue multi-million-dollar contracts with Saudi Arabia, the UAE, Angola, Romania, and other high-paying foreign principals seeking to influence U.S. government officials, including then-President Donald Trump.  As described in a May 2018 article about Broidy's leaked emails, Circinus "secured at least $800 million in foreign defense contracts since Trump took office," all of which "came after Broidy reportedly worked his contacts in D.C.— including Trump—to advocate for positions favorable to the countries that Circinus now lists as clients."[2]  Broidy's brazen violation of federal law ultimately led to his (most recent) criminal conviction.

Despite putting his character, misconduct, business relations, and reputation at issue in the FAC, both as elements of specific claims and also as alleged damages, Broidy has fought tooth and nail to prevent Movants from inquiring into those unquestionably relevant topics.  Indeed, Broidy's stonewalling of Movants' discovery requests in the Underlying Action has already necessitated a motion to compel.  *See Broidy Cap. Mgmt. v. Muzin*, No. 1:19-cv-00150 (D.D.C.

---

[2]     Justin Glawe, *Elliot Broidy's Company Got Its Biggest U.S. Government Job Ever While He Pitched Trump Administration*, Daily Beast (May 24, 2018), https://www.thedailybeast.com/elliott-broidys-company-got-its-biggest-us-government-job-ever-while-he-pitched-trump-administration?ref=scroll.

Feb. 7, 2022), ECF No. 115.  Broidy's counsel—who also represents Circinus—has adopted the same strategy in response to subpoenas from Movants to Circinus here.

Pursuant to Federal Rule of Civil Procedure 45, Movants served Circinus with document requests seeking information related to business Circinus conducted on behalf of Broidy, Broidy's relationships with foreign sovereigns, and Broidy's conduct leading up to the alleged hack. Information resulting from these requests will support defenses against Broidy's claims, undermine Broidy's factual allegations, and challenge his asserted entitlement to damages.  That is to say, all of these requests seek relevant information.  *See* Fed. R. Civ. P. 26(b).  In response, Circinus first failed to serve timely objections to Stonington's subpoena, and then belatedly asserted a string of boilerplate, unsupported, copied-and-pasted objections to both subpoenas asserting that nearly every propounded request is "irrelevant," "not proportional," or "improper."

This Court should reject Circinus's surface-level efforts to stonewall reasonable and relevant discovery.  As a threshold matter, it is Broidy who has put the requested information at issue with his lawsuit, meaning it is Broidy who has subjected both himself and his company to discovery on his claims.  But, moreover, Circinus's objections are doubly deficient.  The failure to timely object, and the lack of any specificity in Circinus's boilerplate objections, should result in a complete waiver of Circinus's objections.  And Circinus's few "specific" objections are, in any event, substantively wrong.  The Court should grant Movants' motion to compel in full.

## **BACKGROUND**

### A.    **The Stonington Subpoena**

On December 22, 2021, counsel for Circinus/Broidy agreed to accept service of Stonington's subpoena on behalf of Circinus, with a compliance deadline of January 10, 2022. Under the Federal Rules, written objections were therefore due on January 5, 2022.  *See* Fed. R. Civ. P. 45(d)(2)(B) ("The objection must be served before the earlier of the time specified for

compliance or 14 days after the subpoena is served.").  But January 5 came and went without any correspondence from Circinus.  On January 7—after the deadline for objections had passed, and three days before the subpoena's **return** date—counsel for Circinus requested a brief extension of time to "respond."  Ex. B (Extension Request).  Counsel made no mention of objections, and Stonington agreed "to extend the deadline to respond until Friday, January 14," directing that "[r]esponsive materials may be delivered electronically" on that date. Ex. C (Extension Response). Counsel for Circinus did not reference objections, nor did Movants agree to extend Circinus's deadline to make them—that deadline had passed, and objections were waived.

On January 14, Circinus did not produce responsive materials.  Instead, counsel lodged boilerplate, unsupported objections to Stonington's requests and blanket refusals to respond to the vast majority of them.  Out of Stonington's thirty-six requests, Circinus refused to comply with all but five.  And for those responses, Circinus plans to unilaterally and unjustifiably narrow its productions to only a subset of what Stonington has requested.  As Broidy has in the Underlying Action, Circinus represented it will only consider producing materials directly related to the alleged hack itself. Ex. D (Circinus Objs. to Stonington Subpoena).  Materials related to Broidy's lobbying and to the nature of his business transactions, in other words—topics Broidy himself put at issue in his FAC and which are directly relevant to his allegations and supposed damages—are off-limits.  Moreover, although Stonington requested materials extending back to January 1, 2016, Circinus refuses to produce any documents predating the December 1, 2017 alleged onset of the hack—despite the fact that Broidy's allegations in the FAC extend back significantly further.

Stonington responded by notifying counsel that (1) Circinus's objections were untimely under Federal Rule of Civil Procedure 45 and thus waived; (2) the objections were also waived because they were unsupported, nonspecific, and boilerplate; and (3) the reasons provided by

counsel for withholding responses to the subpoenas were substantively unfounded in any event. Ex. E (Waiver Correspondence).  Counsel for Circinus/Broidy subsequently accused Stonington of "harassment" and of advancing a "meritless 'blame the victim' 'defense.'"  Ex. F (Subpoena Relevance Correspondence).  Circinus chose to stand on its objections following additional correspondence, forcing Stonington to file the present Motion.

### B.    Howard's Subpoena

Howard served Circinus by email on January 6, 2022.  Ex. G (Howard Subpoena Correspondence); Ex. K (Howard Subpoena to Circinus).  On January 28, Circinus responded with objections that were identical to those it attempted to assert in response to the Stonington subpoena. By agreement, Howard does not assert that Circinus's objections were untimely as to his subpoena. However, on the basis of still more boilerplate, generic, and unsupported objections, Circinus refused to produce documents in response to *any* of Howard's thirty-four requests.  Circinus's objections were thus nonetheless improper.

### C.    Circinus Has Yet to Produce A Single Document

To date, neither Stonington nor Howard has received any responsive materials from Circinus.  In response to the very small handful of requests as to which Circinus has agreed to comply, Circinus states that it will produce responsive materials "following a reasonable search." *See* Ex. D, Request Nos. 2, 9, 12, 34, 35.  But Circinus has had ample time to conduct those searches and has failed to comply at all.  This Court should compel Circinus to fully and immediately comply with Stonington and Howard's subpoenas.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 45, a party may serve a subpoena on a non-party compelling the production of documents.  Fed. R. Civ. P. 45(a)(1)(A)(iii).  "[T]he scope of discovery from a nonparty by means of a subpoena *duces tecum* under Rule 45 is coextensive with

that of a motion for production from a party under Rule 34." *Castle v. Jallah*, 142 F.R.D. 618, 620

(E.D. Va. 1992).  Thus, a party may obtain discovery regarding any matter that is not privileged

and is relevant to any party's claims or defenses.  Fed. R. Civ. P. 26(b)(1).  The information sought

need not be admissible in evidence to be discoverable.  *Id.*

"Discovery under the Federal Rules of Civil Procedure is broad in scope and freely

permitted." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir.

2003).  And "[r]elevance is construed broadly to include any matter that bears on, or that

reasonably could lead to other matter that could bear on, any issue that is or may be in the case."

*Deutsche Bank Nat'l Tr. Co. v. Fegely*, No. 3:16-cv-l47, 2020 WL 201048, at *6 (E.D. Va. Jan 13,

2020).[3]  "A request for discovery should be considered relevant if there is ***any possibility*** that the

information sought may be relevant to the subject matter of the action."  *Id.*  Whether an "asserted

defense ultimately will be persuasive . . . as a matter of law or fact is a separate issue." *Pietrangelo

v. Refresh Club, Inc.*, No. 18-cv-1943, 2021 WL 2156504, at *5 (D.D.C. May 26, 2021); *see also

Alexander v. F.B.I.*, 194 F.R.D. 316, 326 (D.D.C. 2000) ("Discovery is not to be denied because it

relates to a claim or defense that is being challenged as insufficient.").

The party resisting discovery bears the burden of showing "***specifically*** how, despite the

broad and liberal construction afforded the federal discovery rules, each [discovery request] is not

relevant." *Deutsche Bank*, 2020 WL 201048, at *6.  "[M]erely stating that a request is 'overbroad'

or 'unduly burdensome' will not suffice to state a proper objection."  *Id.*  Rather, "[i]n order to

overcome the liberal construction afforded by the federal discovery rules, a party objecting on the

grounds that a request is overly burdensome must submit affidavits or other evidence indicating

---

[3]     Unless otherwise noted, all emphasis in the brief has been added, and all internal citations, quotations, and alterations have been omitted.

with specificity the nature and extent of the burden." *Id.* "The mere fact that responding to a discovery request will require the objecting party to expend considerable time, effort and expense consulting, reviewing and analyzing huge volumes of documents and information is an insufficient basis to object to a relevant discovery request." *Id.*

## ARGUMENT

Movants' subpoenas seek non-privileged documents that are directly probative of specific allegations in the FAC, elements of Broidy's claims and alleged damages, Broidy's motives for bringing this case, and Movants' defenses. Circinus is indisputably in possession of relevant documents and information. Movants' subpoenas are thus both necessary and proper.

Circinus's untimely and/or boilerplate objections do not excuse its non-compliance. *First*, with regard to the Stonington subpoena, untimely objections are considered waived. *Second*, with regard to both subpoenas, Circinus's objections lack specificity, supporting affidavits, and any hint of a good-faith effort to meet its obligations under the Federal Rules. *Third*, Circinus's unilateral narrowing of Movants' requests—which echo counsel's obstructive and improper stonewalling strategy in the Underlying Action—are substantively unfounded. For these and the reasons explained more fully below, the Court should order Circinus to promptly produce all responsive documents.

## I.  CIRCINUS'S UNTIMELY OBJECTIONS TO THE STONINGTON SUBPOENA ARE WAIVED.

Under Rule 45, a non-party "subpoena recipient can assert objections, but they ***must*** be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." *Williams v. Big Picture Loans, LLC*, 303 F. Supp. 3d 434, 441 (E.D. Va. 2018); *see also* Fed. R. Civ. P. 45(d)(2)(B). "Normally, failure to object timely waives any objection, including privilege." *Williams*, 303 F. Supp. 3d at 441; *see also Alexander v. F.B.I.*, 186 F.R.D. 21, 34 (D.D.C. 1998) ("[T]he failure to serve written objections to a subpoena within the time frame

specified by Rule 45(c)(2)(B) typically constitutes a waiver of such objections.");[4] *McCoy v. Sw. Airlines Co.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002) ("[A] nonparty's failure to timely make objections to a Rule 45 subpoena duces tecum generally requires the court to find that any objection, including attorney-client privilege, has been waived.").

Here, Circinus's "objections were clearly untimely." *Williams*, 303 F. Supp. 3d at 442. The time specified for Circinus's compliance with Stonington's subpoena was January 10, 2022, and fourteen days from the issuance of the subpoenas was January 5, 2022. *See* Ex. E; Ex. H (Stonington Subpoena to Circinus). Circinus's objections were thus due on January 5, 2022, the earlier of the two dates. *See* Fed. R. Civ. P. 45(d)(2)(B).

But counsel for Circinus did not serve objections on January 5. Instead, after the objections deadline and three days before the January 10 ***return date***, counsel asked for additional time in which to "respond." Counsel did not state an intention to file untimely objections, did not state an intention to withhold documents in response to Stonington's requests, and did not reference—or ask Stonington to waive its right to enforce—the already-lapsed Rule 45 objections deadline in any way. Nor would Stonington have agreed to that. Instead, Stonington agreed to a brief extension of Circinus's return date, with instructions for the electronic delivery of responsive materials at that time. *See* Ex. E. The parties' correspondence thus extended the time for Circinus's production ***only***. *See Williams*, 303 F. Supp. 3d at 442 (finding agreement to extend production deadline did ***not*** apply to objections deadline, where the "parties' communications do not indicate that the extension of the production date was also intended to apply to [third-party's]

---

[4]     Citations in pre-2013 cases to Rule 45(c)(2)(B) refer, in substance, to the same 14-day provision now housed under Rule 45(d)(2)(B). Amendments to the Rule in 2013 caused "[s]ubdivision (d) [to] contain[ ] the provisions formerly in subsection (c)." Fed. R. Civ. P. 45, Advisory Committee Notes to 2013 Amendment.

objections"[5]); *cf. Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, No. 17-cv-7639, 2019 WL 3069009, at *4 (C.D. Cal. Apr. 29, 2019) (finding agreement to extend deadline to "respond to" Rule 45 subpoena also extended objections deadline only where nonparty's counsel "plainly state[d]" an intention to serve "written objections and responses" on the agreed date). Instead of producing responsive materials on the agreed date, counsel for Circinus filed sweeping objections, which "were untimely and were thereby waived." *Alexander*, 186 F.R.D. at 34.

Only in "unusual circumstances and for good cause shown" will a court consider objections filed past the deadline. *Williams*, 303 F. Supp. 3d at 441. Neither is present here. Counsel for Circinus is also counsel for Broidy, the plaintiff in the Underlying Action. There can be no claim of surprise or unawareness of pending deadlines. And, even after the Rule 45 deadline passed, counsel for Circinus still did not address the already-lapsed objections deadline or forecast any intention to object to Stonington's requests. In related litigation, Broidy, himself, has moved to compel under similar circumstances. Letter from Lee Wolosky, at 1 n.2, *Broidy Cap. Mgmt. LLC v. Allaham*, No. 18-mc-240 (S.D.N.Y. June 9, 2018), ECF No. 3 (arguing the time for objections "has long since passed"); Movants' Mem. Supp. Mot. Show Cause 10 & n.6, *Broidy Cap. Mgmt. LLC v. Allaham*, No. 18-mc-240 (S.D.N.Y. June 6, 2018) ("Because current counsel for Allaham

---

[5]     Indeed, *Williams* casts doubt on whether parties **can** agree to modify the Rule 45 objections deadline, even by agreement: "The Subpoena was served on October 27, 2017, and the original production date was November 15. The parties later agreed to extend that deadline to November 30. But **the parties' agreement cannot change the plain language of Rule 45**, which requires objections to be served 'before the earlier of' the production date or 14 days after service of the subpoena." *Id.*

accepted service of the Subpoena on May 2nd, Allaham had to object by no later than May 16, 2018—14 days after the Subpoena was served on such counsel.").[6]

Circinus cannot credibly claim that its untimely objections should be excused.  It has waived all objections and this Court should order full and immediate compliance with the Stonington subpoena.

## II.   Circinus's Boilerplate, Nonspecific Objections to Both Subpoenas are Likewise Waived.

Even if Circinus's objections are not deemed waived because they are untimely, they are waived because they are insufficient.  This Court has made clear that "boilerplate objections regurgitating words and phrases from Rule 26 are completely unacceptable."  *Clark v. Trans Union, LLC*, No. 3:15-cv-391, 2017 WL 11504623, at *3 (E.D. Va. Mar. 1, 2017).   Thus, conclusory "relevance objections" and statements "that a discovery request is 'overbroad' or 'unduly burdensome' will not suffice to state a proper objection."  *Cappetta v. GC Servs. Ltd. P'ship*, No. 3:08-cv-288, 2008 WL 5377934, at *3 (E.D. Va. Dec. 24, 2008); *accord Ashghari-Kamriani v. United Servs. Auto. Ass'n*, No. 2:15-cv-478, 2016 WL 11642670, at *2 (E.D. Va. May 31, 2016) ("Plaintiffs' objections that the interrogatories are 'vague, ambiguous, overly broad, and unduly burdensome,' and that they seek information beyond the Plaintiff's possession or control are boilerplate objections.").   To properly object on the grounds that a request is "overly burdensome," the objecting party "must submit affidavits or other evidence indicating ***with specificity*** the nature and extent of the burden."  *Deutsche Bank*, 2020 WL 201048, at *6.  Circinus

---

[6]     The cited Memorandum in Support of Broidy's Motion to Show Cause refers to a version of that memorandum that Broidy's counsel circulated to the parties involved at the time, which included Stonington.  Stonington is not aware that this memorandum was publicly docketed by the U.S. District Court of the Southern District of New York given the unique nature of that proceeding.

has decided to stand on textbook examples of "broad and unsubstantiated boilerplate objections," *Ronaldson v. Nat'l Ass'n of Home Builders*, No. 19-cv-01034, 2020 WL 3259226, at *4 (D.D.C. June 3, 2020), which are improper.

In response to nearly every request, Circinus has objected on the copied-and-pasted grounds that the request "seeks documents that are irrelevant to the claims and defenses in this case, not proportional to the needs of the case and for an improper purpose." *See* Exs. D & I (Circinus Objs.). Indeed, Circinus falls back on this exact language at least **61 times** in support of its refusal to answer nearly 90% of the requests from Stonington and Howard. Even when Circinus breaks from its script, it relies on other boilerplate recitations about relevance, proportionality, burden, and/or privilege. *See, e.g.*, Ex. D, Request Nos. 3, 13, 31, 36 (refusing to respond on the grounds that requests are unduly burdensome and seek privileged, irrelevant information); Ex. I (Circinus Resps. to Howard's Subpoena) (objecting throughout "to the extent that [the request] seeks privileged information"). These perfunctory objections border bad faith. *See, e.g.*, *Alexander*, 186 F.R.D. at 35 (finding "overly broad" and "unduly burdensome" objections "frivolous," demonstrating non-party's "fail[ure] to take this request for documents seriously").

None of Circinus's objections explains how or why the corresponding request is irrelevant, disproportionate, or otherwise improper. And Circinus certainly has not provided the "affidavits or other evidence" required to "indicat[e] with specificity the nature and extent" of Circinus's claimed burden. *See Clark*, 2017 WL 11504623, at *3 (admonishing responding party for "litter[ing the] record with bald objections lacking context or appropriate rationale"); *see also RLI Ins. Co. v. Conseco, Inc.*, 477 F. Supp. 2d 741, 750–51 (E.D. Va. 2007) ("[I]t is incumbent upon the proponent to specifically and factually support his claim of privilege, usually by affidavit . . . . A conclusory allegation that a communication is protected by attorney-client

privilege is inadequate to meet this burden.").  Furthermore, to the extent Circinus believes its

"General Objections" satisfy its obligations to state objections with specificity, Circinus is wrong.

*See* Fed. R. Civ. P. 34, advisory committee's note to 2015 amendment; *Spendlove v. RapidCourt,*

*LLC*, No. 3:18-cv-856, 2019 WL 7143664, at *2–4 (E.D. Va. Dec. 23, 2019) (overruling general

objections—and so-called "common specific" objections—for lack of specificity).

Because Circinus's objections do not satisfy its "burden of showing with specificity why a

request is objectionable,"  *Deutsche Bank*, 2020 WL 201048, at *6, Circinus's "completely

unacceptable" objections should be stricken or deemed waived, *Clark*, 2017 WL 11504623, at *3.

### III.   CIRCINUS IMPERMISSIBLY LIMITS ALL OF ITS RESPONSES TO INFORMATION "CONCERNING THE HACKING."

Notwithstanding waiver, Circinus's objections are substantively invalid.  Circinus has

agreed to respond to just five Stonington requests (none for Howard), but has unilaterally decided

to limit its responses to information "concerning the hacking."  *See* Ex. D, Request Nos. 2, 9, 12,

34, 35.  That is improper.  As an initial matter, there is no way to know what Circinus means by

"concerning the hacking" or where Circinus would draw the line.  But more fundamentally, as

noted above, Broidy's 377-paragraph FAC is about substantially more than the alleged hack.

Indeed, Movants are not even alleged to have participated in the hack itself.  Under the Federal

Rules, a subpoena may rightly require the production of information "if there is ***any possibility***

that the information sought may be relevant to the subject matter of the action."  *Deutsche Bank*,

2020 WL 201048, at *6; *see also Tequila Centinela, S.A. de C.V. v. Bacardi & Co*., 242 F.R.D. 1,

6–7 (D.D.C. 2007) (explaining that "information not directly pertinent to the incident in suit could

be relevant to claims or defenses raised in a given action" (quoting Fed. R. Civ. P. 26 Advisory

Committee Notes 2000 Amendment)).  Circinus's self-imposed limitation on the scope of

discovery is thus facially and substantively defective.

The FAC contains myriad allegations regarding a broad range of issues, including Broidy's public image, the veracity of the news articles written about his leaked emails, his business dealings, his supposed trade secrets, and his supposedly altruistic opposition to Qatar. *See, e.g.*, FAC ¶¶ 8, 12, 27 (alleging defendants in the Underlying Action "manufactur[ed] negative news stories" about Broidy, describing Broidy as a "civil leader and philanthropist," and claiming the coverage of his leaked emails harmed his "standing and business relationships in Washington, D.C.")  By putting facts at issue that do not directly concern the alleged hack itself, Broidy has necessarily made discovery into those facts appropriate, including third-party discovery, particularly of his own firm. *See Pietrangelo v. Refresh Club, Inc.*, No. 18-cv-1943, 2021 WL 1209300, at *9 & n.3 (D.D.C. Mar. 31, 2021) (explaining that even "one word" in a complaint can "open a can of discovery worms," and that a "seasoned litigator such as Plaintiff ought to know better than to include such superfluous language in a complaint if he is not prepared to litigate it"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-cv-251, 2015 WL 12952688, at *3 (N.D. Cal. Jan. 16, 2015) (holding that discovery that can "rebut allegations" is relevant, and thus discoverable, even if not directed to a central issue).

For example, the Stonington subpoena requests communications between Circinus and others "regarding . . . the State of Qatar"—the actor accused of perpetrating the alleged hack, and Movants' alleged co-conspirator. *See* Ex. D, Request Nos. 2, 9, 12, 34, 35.  But Circinus, in response, has agreed to produce only those documents "concerning the hacking at issue in this case." Ex. D at 5.  Such a production would prevent Stonington from understanding Broidy's relationship with Qatar before and after the alleged hack, Qatar's purported motive for executing the supposed hack, and Broidy's motives for pursuing the Underlying Action—all of which Broidy has put directly at issue in the FAC and in filing seriatim lawsuits about this alleged hacking

enterprise. *See, e.g.*, *Pietrangelo*, 2021 WL 1209300, at *9–10 (holding "plaintiff's motives for bringing this lawsuit" are relevant "to defenses the [defendants] may seek to mount"). There is no justification for Circinus to refuse to produce documents that are clearly relevant to Broidy's claims and Movants' defenses.

## IV.   CIRCINUS REFUSES TO PRODUCE DOCUMENTS REGARDING BROIDY'S ILLEGAL ACTIVITY.

The FAC alleges that Movants shared Broidy's leaked emails with journalists who published supposedly false and misleading articles about them, thus injuring Broidy's public standing and revealing his alleged trade secrets. *See, e.g.*, FAC ¶¶ 117, 119, 122–23, 126, 130, 141–42, 144, 148, 151–52, 158. Conspicuously, the FAC does not discuss the substance of the emails or the articles based on them. It is not difficult to understand why. As the articles referenced in the FAC reveal,[7] Broidy—using the corporate entities he controlled (including Circinus)—

---

[7]     *See, e.g.*, Justin Glawe, *Elliot Broidy's Company Got Its Biggest U.S. Government Job Ever While He Pitched Trump Administration*, Daily Beast (May 24, 2018), https://www.thedailybeast.com/elliott-broidys-company-got-its-biggest-us-government-job-ever-while-he-pitched-trump-administration?ref=scroll; Bradley Hope et al., *Trump Ally Was in Talks to Earn Millions in Effort to End 1MDB Probe in U.S.*, Wall Street J. (Mar. 1, 2018), https://www.wsj.com/articles/trump-ally-was-in-talks-to-earn-millions-in-effort-to-end-1mdb-probe-in-u-s-1519919321; Suzanne Kianpour, *Emails show UAE-linked effort against Tillerson*, BBC (Mar. 5, 2018), https://www.bbc.com/news/world-us-canada-43281519; David D. Kirkpatrick & Mark Mazzetti, *How 2 Gulf Monarchies Sought to Influence the White House*, N.Y. Times (Mar. 21, 2018), https://www.nytimes.com/2018/03/21/us/politics/george-nader-elliott-broidy-uae-saudi-arabia-white-house-influence.html; Desmond Butler et al., *Mueller probe witness secretly backed UAE agenda in Congress*, AP News (Mar. 26, 2018), https://apnews.com/article/north-america-donald-trump-ap-top-news-qatar-politics-b4946f7bf1fe4328b0c81506434aa082; Ryan Grim & Alex Emmons, *Trump Fundraiser Offered Russian Gas Company Plan to Get Sanctions Lifted for $26 Million*, The Intercept (Apr. 20, 2018), https://theintercept.com/2018/04/20/elliott-broidy-trump-russia-sanctions/; Desmond Butler et al., *The princes, the president and the fortune seekers*, AP News (May 21, 2018), https://apnews.com/article/north-america-donald-trump-ap-top-news-qatar-international-news-a3521859cf8d4c199cb9a8567abd2b71; Adam Pasick, *A timeline of all the foreign payments to Donald Trump's moneymen, Elliott Broidy and Michael Cohen*, Quartz (May 25, 2018),

(continued…)

engaged in covert efforts to influence high-ranking U.S. government officials—including the President of the United States, Secretary of State, Attorney General, and members of Congress—on behalf of foreign principals. The emails and articles indicate that Broidy and his entities performed, or sought to perform, such work on behalf of Saudi Arabia, the UAE, Angola, Romania, Malaysia, Morocco, Nigeria, the Republic of the Congo, the Republic of Tunisia, and the Kurdistan Regional Government, among others. Broidy never disclosed any of this activity or registered as a foreign agent, as required under the Foreign Agents Registration Act of 1938, 22 U.S.C. § 611 *et seq.* ("FARA"), and eventually pleaded guilty to conspiring to violate FARA (though he was subsequently pardoned by President Trump).[8] As described by the Department of Justice, Broidy was "secretly do[ing] the bidding of foreign principals" in "a covert campaign to influence the U.S. Government."[9] Further, as Broidy's plea agreement revealed, Broidy sought "to obtain business from a Middle Eastern country"—understood to be the UAE—"to influence U.S. policy towards a second Middle Eastern country and its alleged support of terrorist activities"—understood to be Qatar. *United States v. Broidy*, No. 1:20-cr-210 (D.D.C. Oct. 20, 2020), ECF No. 8 at 3.

As Movants explained in their recent motion to compel Broidy to comply with discovery requests in the Underlying Action, information relating to Broidy's illegal conduct is highly

---

https://qz.com/1287027/a-timeline-of-donald-trump-associates-elliott-broidy-and-michael-cohens-payments-from-foreign-countries/; Andy Kroll, *How Trump's Swamp Works Now*, Rolling Stone (Feb. 12, 2019), https://www.rollingstone.com/politics/politics-features/elliott-broidy-donald-trump-swamp-793159/; Dan Friedman, *Qatari Lobbyists Received Millions Through Shadow Firm*, Mother Jones (Jan. 8, 2019) https://www.motherjones.com/politics/2019/01/qatari-lobbyists-received-millions-through-shadow-firm/.

[8]     *United States v. Broidy*, 1:20-cr-210 (D.D.C. Oct. 23, 2020), ECF No. 13 at 80.

[9]     U.S. Dep't of Justice, *Recent FARA Cases* (Dec. 3, 2021), https://www.justice.gov/nsd-fara/recent-cases.

relevant to Movants' litigation of this case for at least seven reasons:

- To refute Broidy's claim that the leaked emails "create[d] a false and injurious image" of him and thereby caused him harm.  FAC ¶ 33; *see also id.* ¶¶ 8, 26, 255, 364 (alleging Movants "falsely and misleadingly connect[ed] Mr. Broidy to wrongdoing," "falsely associat[ed] him with illegal activity," and sought "to damage his image" through "false and misleading stories based on the hacked and stolen information");

- To demonstrate that the allegedly hacked materials are not entitled to trade secret protection because they are part of illegal, deceptive, or otherwise harmful activity.  *See, e.g.*, *Goodman v. Genworth Fin. Wealth Mgmt.*, 881 F. Supp. 2d 347, 355 (E.D.N.Y. 2012) ("Deceptive, illegal or fraudulent activity simply cannot qualify for protection as a trade secret."); *Alderson v. United States*, 718 F. Supp. 2d 1186, 1200 (C.D. Cal. 2010), *aff'd*, 686 F.3d 791 9th Cir. 2012);

- To support movants' unclean-hands defense and rebut Broidy's repeated allegations that he was targeted because of his supposedly altruistic opposition to Qatar (*see, e.g.*, FAC ¶¶ 1–2, 12, 45–49), a theme Broidy no doubt will continue to press at trial.  *See Thomas v. Starz Ent., LLC*, No. 15-cv-09239, 2017 WL 11628086, at *2 (C.D. Cal. May 26, 2017) ("Defendants are entitled to take discovery to find information that may rebut" plaintiff's statements regarding his own work); *Cont'l Cirs. LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1019 (D. Ariz. 2020) (holding "Defendants are entitled to conduct discovery that may refute potential trial themes");

- To undermine Broidy's credibility by revealing the vast scope of Broidy's undisclosed, illegal foreign lobbying.  *See Pete v. Big Picture Loans, LLC*, Nos. 3:17-cv-461, 3:18-CV-406, 2020 WL 3979662, at *3 (E.D. Va. July 14, 2020) ("the scope of discovery is broad and easily encompasses questions regarding Pete's potential bias and credibility"); *U.S. v. Concord Mgmt. & Consulting LLC*, 347 F. Supp. 3d 38, 49–50 (D.D.C. 2018) (holding the "failure to disclose information to the United States—in the face of a legal obligation to do so [under FARA]—qualifies as deceit, craft or trickery");

- To support Howard's First Amendment defense that he encouraged journalists to write about the emails in order to expose high-level corruption, and not because he was involved in a conspiracy with hackers.[10]  *See Bartnicki v. Vopper*, 532 U.S. 514 (2001) (holding that the First Amendment protects disclosure of illegally intercepted communications involving

---

[10]     Circinus's counsel will no doubt argue (as they have in the Underlying Action) that Howard may not raise this defense because the underlying court rejected it at the motion-to-dismiss stage. The court did not reject a First Amendment defense.  Instead, it held that the First Amendment *will* shield Howard from liability unless Broidy can prove that Howard "conspired with the hackers." Underlying Action, ECF No. 51 at 43–44.  Because that is an evidentiary issue, the court concluded that it could not be resolved on a motion to dismiss.  *Id.*  Accordingly, Howard maintains, and is entitled to discovery regarding, this defense.

matters of sufficient "public importance" by parties who did not participate in the interception);

- To identify who actually hacked Broidy's emails, undermining his unsubstantiated assertions that Qatar was behind the alleged hack.  *See* FAC ¶¶ 103–105 (describing forensic evidence revealing that, during the months-long alleged hack, hackers accessed Broidy's servers at least 180 times, only two of which involved an IP address located in Qatar).  Discovery regarding Broidy's illegal business dealings and secret lobbying on behalf of foreign interests will likely reveal evidence of numerous parties, other than Qatar, who had a motive and the means to hack Broidy's email;

- To demonstrate that Broidy's motivation to bring this and similar lawsuits— notwithstanding their lack of merit—was to artificially inflate his standing as a self-proclaimed adversary of Qatar and, in turn, boost the business prospects of Circinus and his other companies.  *See Pietrangelo*, 2021 WL 1209300, at *9 (holding that "plaintiff's motives for bringing this lawsuit . . . [are] relevant").

*See* Underlying Action, ECF No. 115.  In other words, evidence of Broidy's illegal conduct undermines Broidy's allegations and claimed damages and provides the foundation for multiple defenses.

Consistent with the above purposes, Movants subpoenaed documents from Circinus relating to Broidy's and his associates' illicit work on behalf of foreign actors, including work with Qatar, the regional rival of Broidy's clients and prospective clients.  *See* Ex. D, Request Nos. 1– 35; Ex. I, Request Nos. 1–34.  For example, Stonington requested that Circinus provide "communications with Special Counsel Robert Mueller and his investigation team relating to the State of Qatar, the United Arab Emirates, or the Kingdom of Saudi Arabia" (Stonington Request No. 33), in addition to "[a]ll documents and communications regarding any investigation of Yours or Broidy's activities relating to the State of Qatar, the United Arab Emirates, or the Kingdom of Saudi Arabia by any foreign state or U.S. federal, state, or other regulatory agency" (Stonington Request No. 32).  And Movants both propounded requests concerning Circinus's (and thus Broidy's) FARA compliance.  *See* Ex. D, Request Nos. 6–7; Ex. I, Request Nos. 4, 5, 24, 25.  All

of these requests speak directly to the criminality of Broidy's secret lobbying efforts, which are relevant in myriad ways as explained above.

Circinus has altogether refused to respond to the majority of these requests, repeating the boilerplate language used by Broidy in the Underlying Action that such requests are "burdensome" and "irrelevant to the claims and defenses in the case and not proportional to the needs of the case." *See* Ex. D, Request Nos. 1–8, 10–11, 14–33; Ex. I, Request Nos. 1–34. Where Circinus **has** agreed to produce at least some materials, its self-imposed limitation to materials "concerning the hacking" makes clear that it will not produce documents actually responsive to these requests.

Circinus has no legal justification for withholding relevant information—particularly without adequate explanation.[11]  As the FAC and subsequent filings by Broidy make clear, Broidy intends to portray himself to a jury as an innocent victim who was targeted and smeared because he spoke his mind about the threat supposedly posed by Qatar.  In reality, he was a mercenary working illegally on behalf of foreign powers to influence U.S. policy, as his leaked emails and the articles about them accurately reflect.  Movants are entitled to discovery that will allow them to refute Broidy's false narrative, in addition to helping them defeat Broidy's trade secrets claims, undermine Broidy's credibility, bolster Movants' unclean-hands and First Amendment defenses, offer clues as to who may have actually hacked Broidy's emails, and reveal Broidy's motives for bringing this lawsuit.  This Court should therefore order responsive production.

---

[11]     Moreover, because Circinus repeats the same boilerplate relevance objections throughout its responses, there would be no way for this Court to distinguish which requests Circinus believes are more irrelevant than others were the Court inclined to agree with any of Circinus's objections.

## V.   CIRCINUS REFUSES TO PRODUCE DOCUMENTS REGARDING BROIDY'S DAMAGES.

The FAC makes expansive allegations concerning the damages Broidy supposedly suffered because of the hack and subsequent publication of the information obtained.  These damages include loss of business and damage to business relationships, loss of consumer goodwill, and harm to his reputation and public image.  *See* FAC ¶¶ 33, 26, 255, 272, 286, 303, 317, 328, 364, 374.  Documents relating to Broidy's alleged damages are squarely within the scope of permissible discovery.  *See* 8 Charles Alan Wright, et al., Federal Practice & Procedure (2021) ("As a general matter, it is clear that discovery as to damages is proper."); *Primrose v. Castle Branch, Inc*., No. 7:14-cv-235, 2016 WL 917318, at *6 (E.D.N.C. Mar. 8, 2016) ("By contending that defendant's conduct rendered her ineligible for an internship and impaired her later career advancement, plaintiff has placed in issue her qualifications for the internship and subsequent employment.  Her performance as a student and employee at UNCW as reflected in her student and employment files are relevant to such qualifications."); *Eshelman v. Puma Biotechnology, Inc*., No. 7:16-cv-18, 2018 WL 1702773, at *4–5, 9 (E.D.N.C. Apr. 6, 2018) (compelling plaintiff to produce information related to his finances and business dealings where complaint alleged plaintiff's "business and investments have been adversely affected" and "reputation ha[d] been impugned"); *Nat'l Cmty. Reinvestment Coalition v. NovaStar Fin., Inc.*, No. 07-861, 2009 WL 10719757, at *2 (D.D.C. 2009) (compelling plaintiff to produce "detailed information as to the amount of damages allegedly sustained . . . , how those amounts were determined, how the loss was attributable to defendant, and the dates applicable to each purported loss").

Given Broidy's ownership and control over Circinus, and the FAC's allegations that Broidy has suffered "business injury" specifically, FAC ¶ 258, Circinus likely possesses documents and

information relevant to Broidy's damages allegations.[12]   To that end, Movants propounded requests seeking such information, which Circinus now refuses to provide, citing the same "irrelevant," "burdensome," and "not proportional" mantra.   For example, Circinus refuses to provide "bank statements for accounts belonging to You between January 1, 2016 and the present" (Ex. D, Request No. 36), documents "relating to any financial transactions or exchanges of anything of value . . . between Circinus and" several foreign states (Ex. I, Request Nos. 6, 26), and documents relating to other domestic and foreign financial transactions (Ex. I, Request Nos. 7–9, 27–29).   These documents are clearly relevant to Broidy's claim of "financial damage resulting from loss of consumer goodwill and business relationships."   FAC ¶ 258.   Moreover, as discussed above, Circinus refuses to provide documents concerning its involvement with the UAE, Saudi Arabia, Angola, or other foreign states, which will demonstrate whether Broidy's relationships or standing have been damaged vis-à-vis his business dealings with foreign entities, as he claims.

Circinus's resistance presumably stems from concerns about revealing criminal conduct. But such concerns do not empower Circinus to withhold plainly relevant documents in Broidy's own litigation.   Movants' requests are clearly tied to Broidy's own theory of damages and speak directly to allegations he made in the FAC.   *See, e.g.*, *Dickerson v. District of Columbia*, No. 09-2213, 2019 WL 6910043, at *5 (D.D.C. Dec. 19, 2019) (compelling plaintiff to "provide the 'basis for claiming the type or category of damages' for the damages of 'emotional harm and inconvenience' and 'harm to his reputation'").

---

[12]   Of course, if Circinus does not have responsive documents, it could simply say so—as it responded to a subset of Stonington Request No. 13 ("Circinus has no contracts, agreements, *etc.* regarding Defendants or the hacking.")

## VI.   CIRCINUS REFUSES TO PRODUCE ANY DOCUMENTS FROM BEFORE DECEMBER 2017.

As Broidy has in the Underlying Action, Circinus refuses to produce any documents created before December 1, 2017.  *See* Ex. D at 3; Ex. I at 3.  Circinus provides no explanation whatsoever for limiting the timeframe of its compliance in such a manner.  In the Underlying Action, Broidy's counsel has stated that because the alleged hacking operation began in December 2017 (by his own untested assertion), documents preceding that date are categorically irrelevant. Having failed to assert any such explanation on behalf of Circinus, counsel for Broidy/Circinus has waived that argument with respect to Circinus.  But it is, in any event, quite wrong.

*First*, all of the emails that were allegedly hacked—and therefore all of the illegal activity reflected in those emails—were created before the alleged hacking operation began in December 2017.  By imposing a December 2017 cutoff, Circinus prevents Movants from obtaining access to evidence regarding this activity, which, as explained above, is vital to this case.

*Second*, Movants must be allowed discovery predating December 2017 to test Broidy's theory of damages, his credibility, the falsity or truth of the publications that supposedly harmed his reputation, the steps Broidy took to protect his so-called trade secrets, etc.  Broidy himself has put pre-2017 facts at issue, claiming, for example, that the alleged hack and dissemination of his emails damaged both his public standing and business relationships.  *See, e.g.*, FAC ¶¶ 272, 286, 303, 317, 328, 374.  With respect to his public standing, the FAC alleges facts predating December 2017 in order to establish Broidy's supposedly sterling reputation.  For example, the FAC discusses his work on the Homeland Security Advisory Council from 2006 through 2009 and notes that Broidy "is a prominent business and civic leader who has actively served in leadership roles in U.S. government advisory groups, Jewish organizations, and the Republican Party for decades." *Id.* ¶ 45.  These are not stray comments and will no doubt appear as themes at trial.  Indeed, in a recent filing in the Underlying Action, Broidy himself argued that his work "enhancing U.S.

21

national security" over the past "***two decades***" provides "***relevant context***" for this case.  ECF No. 110 at 17 n.15.

Broidy also claims to have lost business and consumer goodwill as a result of the alleged hack.  FAC ¶¶ 272, 286, 303, 317, 328, 374.  In order for Movants and their experts to accurately assess, and ultimately contest, this alleged loss, they need to review evidence of Broidy's business relationships and consumer goodwill before the alleged hack to compare them to his business relationships and consumer goodwill after the alleged hack.  As one of Broidy's most lucrative businesses, Circinus possesses documents that will shed important light on this issue.

At bottom, having conceded that pre-2017 conduct and information is relevant context, counsel for Broidy/Circinus cannot justify its lopsided refusal to limits Circinus's responses to materials from December 2017 and later.  Movants' requests for materials extending back to January 1, 2016 are thus more than reasonable.

## <u>CONCLUSION</u>

For the foregoing reasons, Movants respectfully request that the Court compel Circinus to respond in full to the discovery requests identified above and compiled in the chart attached as Exhibit J, to award Movants the reasonable expenses and attorneys' fees they incurred in making this motion, and to grant such other relief as appropriate.

Dated: February 11, 2022

Respectfully Submitted,

/s/ Stephen J. Obermeier

Jeffrey A. Udell (*pro hac vice* forthcoming)
Adam P. Cohen (*pro hac vice* forthcoming)
Jacob Gardener (*pro hac vice* forthcoming)
WALDEN MACHT & HARAN LLP
250 Vesey Street, 27th Floor
New York, NY 10281
Phone: (212) 335-2030
judell@wmhlaw.com
acohen@wmhlaw.com
jgardener@wmhlaw.com

*Counsel for Defendant Gregory Howard*

Stephen J. Obermeier (VSB No. 89849)
sobermeier@wiley.law
Rebecca Saitta (VSB No. 65408)
rsaitta@wiley.law
Krystal B. Swendsboe (VSB No. 89614)
kswendsboe@wiley.law
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
Phone: (202) 719-7000
Facsimile: (202) 719-7049

*Attorneys for Defendants Stonington*
*Strategies LLC and Nicolas D. Muzin*