**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In Re: Motion to Compel Compliance with Subpoena Directed to Non-Party Circinus LLC | Case No. 1:22-mc-00030-DLF |

Underlying Matter

BROIDY CAPITAL MANAGEMENT, LLC
and ELLIOTT BROIDY,

                                    Plaintiffs,

        v.

NICOLAS D. MUZIN, JOSEPH
ALLAHAM, GREGORY HOWARD, and
STONINGTON STRATEGIES LLC,

                                    Defendants.

**REPLY MEMORANDUM OF STONINGTON DEFENDANTS AND
HOWARD IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL
<u>SUBPOENA RESPONSES FROM NON-PARTY CIRCINUS LLC</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

    I.    CIRCINUS WAIVED ITS OBJECTIONS BY FAILING TO TIMELY SERVE THEM. ............ 2

    II.    NO UNUSUAL CIRCUMSTANCES OR GOOD CAUSE EXISTS TO CONSIDER
        CIRCINUS'S UNTIMELY OBJECTIONS. ................................................................... 5

    III.    CIRCINUS WAIVED ITS OBJECTIONS BY RELYING ON NONSPECIFIC,
        BOILERPLATE LANGUAGE. ................................................................................... 10

    IV.    CIRCINUS OFFERS NO VALID SUBSTANTIVE DEFENSE OF ITS BLANKET
        OBJECTIONS. ...................................................................................................... 13

        A.    Movants Are Entitled To Discovery Into Allegations Broidy Made
            in the FAC. ............................................................................................. 13

        B.    Circinus Cannot Unilaterally Limit Its Responses To Information
            "Concerning The Hacking." ..................................................................... 16

        C.    Circinus Cannot Refuse To Produce Documents Relating To
            Broidy's Illegal Activity. ........................................................................ 18

        D.    Stonington and Howard Are Entitled To Discovery Into Broidy's
            Damages. ................................................................................................ 20

        E.    Circinus Cannot Justify Its Refusal To Produce Documents
            Predating December 2017. ...................................................................... 22

    CONCLUSION ............................................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. F.B.I.*,
  186 F.R.D. 21 (D.D.C. 1998) ........................................................................... *passim*

*Alexander v. F.B.I.*,
  194 F.R.D. 316 (D.D.C. 2000) ................................................................................7

*Athridge v. Aetna Cas. & Sur. Co.*,
  184 F.R.D. 181 (D.D.C. 1998) ..............................................................................12

*Bartnicki v. Vopper*,
  532 U.S. 514 (2001) ..............................................................................................20

*Biton v. Palestinian Interim Self-Gov't Auth.*,
  239 F.R.D. 1 (D.D.C. 2006) ....................................................................................3

*Clyburn v. News World Commc'ns, Inc.*,
  117 F.R.D. 1 (D.D.C. 1987) ..................................................................................14

*Concord Boat Corp. v. Brunswick Corp.*,
  169 F.R.D. 44 (S.D.N.Y. 1996) ......................................................................5, 6, 8

*Convertino v. U.S. Dep't of Justice*,
  565 F. Supp. 2d 10 (D.D.C. 2008) ..................................................................11, 12

*In re Denture Cream Prods. Liab. Litig.*,
  292 F.R.D. 120 (D.D.C. 2013) ..............................................................................12

*Deutsche Bank Nat'l Tr. Co. v. Fegely*,
  No. 3:16-CV-147, 2020 WL 201048 (E.D. Va. Jan. 13, 2020) ...............................6

*Doe v. Cabell Cnty. Bd. Educ.*,
  No. 3:21-CV-00031, 2022 WL 288193 (S.D. W. Va. Jan. 31, 2022) ......................7

*Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc.*,
  200 F.R.D. 255 (M.D.N.C. 2001) ...........................................................................9

*EEOC v. George Wash. Univ.*,
  No. 17-CV-1978, 2020 WL 3489478 (D.D.C. June 26, 2020) ..............................14

*English v. Wash. Metro. Area Transit Auth.*,
  323 F.R.D. 1 (D.D.C. 2017) ..................................................................................14

*Goodman v. Genworth Fin. Wealth Mgmt.*,
  881 F. Supp. 2d 347 (E.D.N.Y. 2012) ...............................................................18

*Juno Therapeutics, Inc. v. Kite Pharma, Inc.*,
  No. 17-CV-7639, 2019 WL 3069009 (C.D. Cal. Apr. 29, 2019) ...........................3, 4

*Krieger v. Fadely*,
  199 F.R.D. 10 (D.D.C. 2001)..........................................................................13, 14

*Labrier v. State Farm Fire & Cas. Co.*,
  314 F.R.D. 637 (W.D. Mo. 2016)........................................................................15

*Liberato v. Armor Corr. Health Servs., Inc.*,
  No. 3:19-CV-00042, 2020 WL 2564681 (W.D. Va. May 20, 2020)........................9

*Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC*,
  286 F.R.D. 8 (D.D.C. 2012)..................................................................................8

*Nat'l Cmty. Reinvestment Coalition v. NovaStar Fin., Inc.*,
  No. 07-861, 2009 WL 10719757 (D.D.C. July 13, 2009) ....................................21

*Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*,
  322 F.R.D. 1 (D.D.C. 2017)...........................................................................14, 15

*Pietrangelo v. Refresh Club, Inc.*,
  No. 18-CV-1943, 2021 WL 1209300 (D.D.C. Mar. 31, 2021) ..................15, 16, 19

*Pietrangelo v. Refresh Club, Inc.*,
  No. 18-CV-1943, 2021 WL 2156504 (D.D.C. May 26, 2021)................................6

*Ronaldson v. Nat'l Ass'n of Home Builders*,
  No. 19-CV-01034, 2020 WL 3259226 (D.D.C. June 3, 2020)..............................11

*Sabol v. Brooks*,
  469 F. Supp. 2d 324 (D. Md. 2006) ...................................................................12

*In re State Farm Fire & Cas. Co.*,
  872 F.3d 567 (8th Cir. 2017) ............................................................................15

*Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*,
  242 F.R.D. 1 (D.D.C. 2007)...............................................................................16

*Williams v. Big Picture Loans, LLC*,
  303 F. Supp. 3d 434 (E.D. Va. 2018) ............................................................2, 3, 4

*Yousuf v. Samantar*,
  451 F.3d 248 (D.C. Cir. 2006) ..........................................................................5, 9

**Rules**

Fed. R. Civ. P. 6(b) .................................................................................................3

Fed. R. Civ. P. 26(a)(1)(A) ....................................................................................21

Fed. R. Civ. P. 34 .................................................................................................12

Fed. R. Civ. P. 45(c)(2)(B) ..................................................................................2, 5

Fed. R. Civ. P. 45(d) ...............................................................................................2

Fed. R. Civ. P. 45(d), Advisory Committee Note to 1946 Amendment .......................13

Fed. R. Civ. P. 45(d), Advisory Committee Note to 2013 Amendment .........................2

Fed. R. Civ. P. 45(d)(2)(B) ......................................................................................2

LCvR 83.8(b)(6)(ii) .................................................................................................4

**Other Authorities**

8 Charles Alan Wright et al., *Federal Practice & Procedure* (2021) ..........................21

Movants Nicolas D. Muzin, Stonington Strategies, LLC (together, "Stonington"), and Gregory Howard ("Howard" and, collectively, "Movants"), submit this Reply in further support of their Motion to Compel Circinus LLC ("Circinus") to comply with subpoenas for documents issued to it under Federal Rule of Civil Procedure 45. *See* Movants' Mem. Supp. Mot. Compel Subpoena Responses from Circinus LLC, ECF No. 4 ("Mov. Mem.").

## **<u>INTRODUCTION</u>**

Circinus's opposition is more of the same from Broidy (who effectively owns Circinus, whose attorneys represent Circinus and who is clearly calling the shots with respect to the subpoena response): unlimited discovery of Defendants is fair game; any discovery of Broidy or third parties working for him is irrelevant and amounts to bad faith unless it relates to a small universe of events that Broidy deems appropriate; Broidy and the third parties working for him can ignore deadlines and flout the discovery rules, and when Defendants seek to enforce those rules, they are—yet again—acting in bad faith.  But Broidy's latest complaints—this time made through Circinus in its opposition—do not undermine the right of Defendants to seek documents from third parties—like Circinus—that played a key role in the events outlined in Broidy's lengthy and detailed complaint.  And when those third parties miss objection deadlines, give untimely boilerplate objections, and fail to produce any documents whatsoever, there are consequences under the Federal Rules.  Generalized complaints that a subpoena is too broad do not excuse a third party from complying with discovery obligations.  Circinus's opposition makes plain that it has no credible response to the fact that it has ignored—and continues to ignore—those obligations.  The motion to compel should be granted in full.

## ARGUMENT

## I.   CIRCINUS WAIVED ITS OBJECTIONS BY FAILING TO TIMELY SERVE THEM.

Circinus begins its argument by claiming—facts notwithstanding—that its objections "were timely."  Opp'n 5.  Rule 45, though, required Circinus to serve written objections "before the earlier of the time specified for compliance or 14 days after the subpoena is served."  Fed. R. Civ. P. 45(d)(2)(B).  Stonington served its subpoena on December 22, 2021, with a compliance date of January 10, 2022.  *See* Mov. Mem. Ex. H (Stonington Subpoena).  Accordingly, written objections were due 14 days after service on January 5, 2022.

Circinus does not dispute—because it cannot—that the date came and went with no objections, no response, and no request for an extension.  By missing this deadline, Circinus waived all objections.  *See Williams v. Big Picture Loans, LLC*, 303 F. Supp. 3d 434, 441 (E.D. Va. 2018) ("[F]ailure to object timely waives any objection, including privilege"); *Alexander v. F.B.I.*, 186 F.R.D. 21, 34 (D.D.C. 1998) ("[T]he failure to serve written objections to a subpoena within the time frame specified by Rule 45(c)(2)(B) typically constitutes a waiver of such objections.").[1]

Boxed in by these facts, Circinus argues that it got, in effect, a *nunc pro tunc* extension for objections.  *See* Opp'n 5–6.  But even after the deadline passed, Circinus never asked for, nor did it receive, an extension to submit written objections.  In fact, Stonington only agreed "to extend the deadline ***to respond*** until Friday, January 14," directing that "[r]esponsive materials may be delivered electronically" on that date.  Mov. Mem. Ex. C (Extension Response) (emphasis added).

---

[1] Citations in pre-2013 cases to Rule 45(c)(2)(B) refer, in substance, to the same 14-day provision now housed under Rule 45(d)(2)(B).  Amendments to the Rule in 2013 caused "[s]ubdivision (d) [to] contain[ ] the provisions formerly in subdivision (c)."  Fed. R. Civ. P. 45(d), Advisory Committee Notes to 2013 Amendment.

This did not—and could not—have amounted to a retroactive extension to serve already-waived objections.  Mov. Mem. Ex. B; *cf. Biton v. Palestinian Interim Self-Gov't Auth.*, 239 F.R.D. 1, 3 (D.D.C. 2006) ("When the request for an extension is made after the deadline has passed, the court may extend the deadline only 'where the failure to act was the result of excusable neglect.'" (quoting Fed. R. Civ. P. 6(b))).

The few authorities on this precise issue uniformly support Stonington.  In *Williams v. Big Picture Loans, LLC*, the responding party's objections were deemed "clearly untimely" and thus waived where the parties "agreed to extend [the] deadline to respond to November 30," without reference to objections.  303 F. Supp. 3d at 439, 442.  Indeed, *Williams* even casts doubt on whether parties can modify Rule 45's objection deadline absent Court approval.  *Id.* at 442; *see also* Mov. Mem. 9 n.5.  Circinus attempts to distinguish *Williams* based on its reference to the "production date."  Opp'n 10 n.3.  But the record in that case clearly indicates that the requesting party "agreed to extend [the] deadline ***to respond***," *Williams*, 303 F. Supp. 3d at 439 (emphasis added), which the Court interpreted to affect the "production date," *id.* at 442, not "the time to respond and object."  Opp'n 10 n.3.  Because the communications in this case track verbatim the communications in *Williams*, the outcome should be the same:  waiver.

*Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, No. 17-CV-7639, 2019 WL 3069009, at *4 (C.D. Cal. Apr. 29, 2019), also supports Stonington.  Circinus argues that Stonington "misstate[s] the holding of *Juno*" because that "court found that the subpoenaed party had *not* waived its objections after seeking an extension of time to respond."  Opp'n 7.  This telling of *Juno* misses the point.  The court there actually held that no waiver occurred "[b]ecause the communication from BMS's counsel . . . plainly states that BMS was planning 'to provide Kite with written ***objections and responses***.'"  *Juno*, 2019 WL 3069009, at *4 (emphasis added).  Read together,

*Williams* and *Juno* stand for the proposition that a responding party only gets what it asks for. Because Circinus only requested an extension "to respond," it only got an extension to respond, not to object. Accordingly, Circinus waived its objections by submitting them nine days after they were due.

Frustrated by the facts and the law, Circinus tries to rescue its extension theory by accusing Stonington of bad faith and blaming Stonington for "setting a trap" that duped Circinus into missing its deadline. Opp'n 6–7. These arguments are unpersuasive.

*First*, Stonington has never attempted to "retract [its] agreement to extend Circinus'[s] time to respond." Opp'n 6. Stonington fully (and mistakenly) anticipated that Circinus would act in good faith and produce responsive documents on January 14, 2022. Instead, Stonington received insufficient (and untimely) objections and no production. To this day—68 days after the extended deadline—Stonington has not received a single responsive document from Circinus.

*Second*, Stonington is not playing some "'gotcha' game". Opp'n 6. It has, in fact, taken a position regularly employed by federal courts (and a position that Broidy himself successfully took with respect to Allaham in the California Litigation, *see* Mov. Mem. 10): missing the objection deadline results in waiver. *See, e.g.*, *Alexander*, 186 F.R.D. at 34 ("[A]ny objections . . . to the document requests contained in that notice were untimely and were thereby waived . . . .").

*Third*, Circinus essentially blames Stonington for the missed deadline, claiming that Stonington set "a trap by deliberately failing to raise" its waiver argument until after the objection deadline had passed and the parties had agreed to an extension for production. Opp'n 6. Circinus cannot avoid its discovery obligations by claiming to have been duped. Every member of this bar is expected to be familiar with the Federal Rules of Civil Procedure, *see* LCvR 83.8(b)(6)(ii), and Circinus is represented by a large law firm that surely knows how to track deadlines.

Circinus's argument, in effect, is that even though it missed the objection deadline, and even though it did not specifically request an extension for objections until after that deadline, **Stonington** somehow acted inappropriately by giving Circinus an extension of its production deadline, and Circinus's flouting of the Federal Rules should be ignored.  To the contrary, as Circinus received no extension for its objections and submitted them out of time, the well-settled law provides that the objections are waived.

## II.   NO UNUSUAL CIRCUMSTANCES OR GOOD CAUSE EXISTS TO CONSIDER CIRCINUS'S UNTIMELY OBJECTIONS.

Circinus has failed make a showing of unusual circumstances or good cause capable of salvaging its waived objections.  In this District, "the failure to serve written objections to a subpoena within the time frame specified by Rule 45(c)(2)(B) typically constitutes a waiver of such objections."  *Alexander*, 186 F.R.D. at 34.  Only in "unusual circumstances and for good cause" will "the failure to act timely . . . not bar consideration of objections."  *Id.*; *see also Yousuf v. Samantar*, 451 F.3d 248, 252 (D.C. Cir. 2006) (requiring unusual circumstances and good cause to consider untimely subpoena objections).  To determine if these "unusual circumstances" exist, courts consider three factors:

> (1) whether the subpoena is over broad on its face and exceeds the bounds of fair discovery; (2) whether the subpoenaed witness is a non-party acting in good faith; and (3) whether counsel for the witness and counsel for the subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged the legal basis for the subpoena.

*Alexander*, 186 F.R.D. at 42 (citing *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996)).  Courts apply these factors on a ***request-by-request basis***, making it possible for a responding party to have waived some objections but not others.  *See, e.g.*, *id.* at 34 (finding that responding party waived objections to 33 of 36 requests).

Consideration of the *Concord Boat* factors in this case reveals no "unusual circumstances," much less "good cause" for Circinus's failure to serve timely objections. ***First***, Stonington's subpoena is neither overbroad nor beyond "the bounds of fair discovery" because it seeks specific information from a relevant time period. *Id.* at 34. To gain ground on this factor, a responding party must show that a request seeks broad swathes of information not limited to a specific subject matter or time frame. *See id.* at 36 (considering objections to request that lacked "time parameters"). But here, the Stonington Defendant's requests are "self-limiting with respect to both time and subject matter." *Id.*

For instance, the requests only seek information "prepared on or after January 1, 2016, through the present." Mov. Mem. Ex. H, at 5 (Stonington Subpoena). Despite Circinus's unfounded effort to narrow this timeframe, *see infra* Section IV.E, these parameters are eminently reasonable because Broidy's allegations in the FAC extend back significantly further. *See, e.g.*, FAC ¶ 45, ECF No. 18-2 (discussing Broidy's work on the Homeland Security Advisory Council from 2006 through 2009). Indeed, Broidy has acknowledged that his advocacy work over the past "two decades" provides "relevant context" for this case. ECF No. 110 at 17 n.15. Moreover, Stonington targeted its requests to subject matter that directly relates to the claims and defenses at issue in this case.[2] *See* Mov. Mem. 12–22; *see also Deutsche Bank Nat'l Tr. Co. v. Fegely*, No. 3:16-CV-147, 2020 WL 201048, at *6 (E.D. Va. Jan. 13, 2020) ("A request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action."); *Pietrangelo v. Refresh Club, Inc.*, No. 18-CV-1943, 2021 WL

---

[2] Stonington's requests are also relevant for the same reasons stated in Defendants' Cross-Motion to Compel 26–45, ECF No. 115, Reply Memorandum in Support of Defendants' Cross-Motion, 5–20, ECF No. 122, and Defendants' Opposition to Plaintiffs' Motion for Protective Order 15–22, ECF No. 121 ("Defs.' P.O. Opp'n").

2156504, at *5 (D.D.C. May 26, 2021) (Friedrich, J.) ("Whether [an] asserted defense ultimately will be persuasive as a matter of law or fact is a separate issue."); *Alexander v. F.B.I.*, 194 F.R.D. 316, 326 (D.D.C. 2000) ("[D]iscovery is not to be denied because it relates to a claim or defense that is being challenged as insufficient."). Accordingly, "it is beyond . . . comprehension" how Circinus considers these requests "over broad or unduly burdensome." *Alexander*, 186 F.R.D. at 36.

Circinus's citation to *Doe v. Cabell County Board of Education*, No. 3:21-CV-00031, 2022 WL 288193, at *4 (S.D. W. Va. Jan. 31, 2022), does not support its overbreadth argument. As an initial matter, this unpublished, out-of-circuit authority concerned a broad discovery request for social media data, which triggered unique public policy considerations not implicated by Stonington's subpoena. *See Doe*, 2022 WL 288193, at *1, *4 ("Courts do not typically endorse an extremely broad request for all social media site content" because such a request seeks "quasi-personal information" without "reasonable particularity."). Moreover, the responding party in *Doe* did not waive its objections because it relied on ultra-specific grounds and supported its position with roughly seven paragraphs of analysis—a far cry from the boilerplate, copy-and-paste language used by Circinus. *Id.* at *1–2. At any rate, despite the level of detail with which the responding party objected, the court in *Doe* still compelled production under narrowed parameters. *Id.* at *4.

**Second**, Circinus cannot seriously consider itself to be some trivial nonparty "acting in good faith." *Alexander*, 186 F.R.D. at 34. Circinus is majority owned and controlled by Elliott Broidy, represented by Broidy's counsel, and provides services that are directly relevant to the allegations in the FAC. It also was directly implicated by the press about Broidy related to the alleged hack. And in the context of responding to subpoenas, good faith means responding to the

subpoena in a timely fashion except where the responding party shows—with more than conclusory, boilerplate objections—that the requests impose an undue burden on the responding party. *See id.* at 43 (finding that a responding party acted in good faith where he "appeared at the deposition" and "responded to the document requests").

Here, Circinus did not get in contact with Stonington regarding the subpoena until two days *after* the objection deadline had passed. Mov. Mem. Ex. B. Even if Circinus contends, as its correspondence suggests, that it was somehow duped into thinking that Stonington's good-faith agreement to an extension request to "respond" to the subpoena with "materials" was an agreement to retroactively ignore the objection deadline, Mov. Mem. Ex. C, Circinus did not even bother to use the extra time to make proper objections. Instead, Circinus unilaterally decided ***not*** to respond to 31 of Stonington's 36 requests. It backs roughly 27 of its refusals with this exact copy-paste language:

> Circinus objects to this Request on the ground that it seeks documents that are irrelevant to the claims and defenses in this case, not proportional to the needs of the case, and for an improper purpose. Based on the foregoing General and Specific objections, Circinus will not produce documents in response to this Request.

Mov. Mem. Ex. I (Circinus Objections). This can hardly be deemed "good faith." And it certainly does not satisfy Circinus's "heavy burden to show that the subpoena should not be enforced." *Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC*, 286 F.R.D. 8, 11 (D.D.C. 2012).

***Third***, communications between counsel for Stonington and Circinus do not rescue the objections from waiver. *Alexander*, 186 F.R.D. at 42. Counsel for Circinus accepted service of the subpoena. Circinus then did not even bother to contact Stonington until after objections were due. And even after the deadline had passed, it never asked for an extension for objections, and the Stonington Defendants never offered one. For these reasons, the *Concord Boat* factors weigh against considering Circinus's untimely objections.

Circinus's citations lack thrust because the grounds for good cause that existed in *Liberato v. Armor Corr. Health Servs., Inc.*, No. 3:19-CV-00042, 2020 WL 2564681, at *3 (W.D. Va. May 20, 2020) and *Yousuf v. Samantar*, 451 F.3d 248, 252 (D.C. Cir. 2006), do not exist here.  The court in *Liberato* found good cause because the subpoena requests there were, unlike the requests here, "facially overbroad."  2020 WL 2564681, at *3.  And the court in *Yousuf* found good cause because the responding party acted "in good faith," the subpoena was overbroad, and the responding party's counsel "acted promptly to contact counsel for the plaintiffs and to file his objections."  451 F.3d at 252.  As explained throughout this brief and in Movants' opening memorandum, Circinus is not acting in good faith, the requests are not overbroad, and Circinus's entire discovery strategy is premised on delay.

Circinus also cites a few out-of-circuit authorities for the proposition that untimely objections may be saved from waiver if they caused no prejudice to the requesting party.  *See* Opp'n 9 (citing *Liberato*, 2020 WL 2564681, at *3, and *Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc.*, 200 F.R.D. 255, 259 (M.D.N.C. 2001)).  In this District, however, untimely objections may only be considered upon a showing of "unusual circumstances" and "good cause," not merely a lack of prejudice.  *Alexander*, 186 F.R.D. at 34.

Nonetheless, Stonington has suffered prejudice.  Broidy's counsel (who also represents Circinus) has simultaneously pushed for an aggressive discovery timeline while engaging in dilatory stonewalling tactics.  Indeed, this Court has adopted—at Broidy's request—a deadline of May 6, 2022, for the "substantial completion of document discovery."  Minute Order (Dec. 8, 2021); Scheduling Conf. Report 1, ECF No. 91.  But Broidy and Circinus have gone to great (and insufficient) lengths to keep Stonington from receiving any responsive documents.  Circinus, for example, filed its objections nine days after they were due.  And it has decided to stand on them,

causing Stonington to waste over three months and significant resources pursuing this motion to compel.  And even though it purports to have responded reasonably in offering to produce documents it deems relevant, Circinus has not produced a single page.  This prejudice could have been avoided if Circinus timely filed its objections and complied with the extended production date of January 14, 2022.

For these reasons, neither unusual circumstances nor good cause exists to consider Circinus's untimely objections.

III.   **CIRCINUS WAIVED ITS OBJECTIONS BY RELYING ON NONSPECIFIC, BOILERPLATE LANGUAGE.**

Circinus tries to defend the sufficiency of its nonspecific objections by attacking Stonington's objections.  Opp'n 10.  This is a red herring that is substantively unfounded.  Although this Motion to Compel concerns the sufficiency of ***Circinus's*** objections, they are not "materially identical" to the objections and responses provided by Movants in response to Broidy's discovery requests.  Opp'n 10.  Movants gave specific grounds for their objections beyond the few snippets selectively excerpted by Circinus.  For example, Stonington and Howard both explain ***why*** Broidy's requests are specifically objectionable on grounds like undue burden, relevance, vagueness, international comity, sovereign immunity, public availability, and privilege.  *See generally* Opp'n Exs. 12 & 13.

Objections aside, Stonington and Howard have pledged to respond to ***all but one*** of the requests served by Broidy.  For this reason, Broidy has not challenged Movants' objections on the basis of specificity.  Movants are cooperating in good faith and have explained their objections in more detail, to the extent Broidy has requested it, during two lengthy meet-and-confer discussions.  By contrast, Circinus has refused to respond to ***65 of the 70*** (92%) requests served by Movants.  And Circinus has relied exclusively on its boilerplate objections to justify these refusals.

10

Circinus's nonspecific objections, coupled with its uncooperative position, set Circinus apart from Movants.  *See also* Defs.' Reply 22–23, ECF No. 122.

Circinus then attempts to defy reality by arguing that its "objections *are* specific."  Opp'n 11.  Notably, Circinus never defends its objections based on their actual language.  Nor could it.  Circinus merely states in conclusory fashion—***61 times***—that Movants' requests "seek[ ] documents that are irrelevant to the claims and defenses in this case, not proportional to the needs of the case, and for an improper purpose."  Mov. Mem. Exs. D & I.  And on the few occasions where Circinus deviates from this exact language, it does so only to state vague concerns about relevance, proportionality, burden, and privilege.  *See, e.g.*, Mov. Mem. Ex. D, Request Nos. 3, 13, 31, and 36.  These are textbook examples of "broad and unsubstantiated boilerplate objections."  *Ronaldson v. Nat'l Ass'n of Home Builders*, No. 19-CV-01034, 2020 WL 3259226, at *4 (D.D.C. June 3, 2020), which are improper and routinely deemed waived.[3]

Unable to defend the language of its objections, Circinus argues that its objections satisfy the ***purpose*** of the Federal Rules' specificity requirement.  Opp'n 11.  According to Circinus, "[t]he specificity requirement exists to 'enable[ ] the requesting party to evaluate and determine whether to challenge the objection raised,'" and Movants have been able to challenge Circinus's objections.  Opp'n 11 (citing *Convertino v. U.S. Dep't of Justice*, 565 F. Supp. 2d 10, 12–13 (D.D.C. 2008)).  Put differently, Circinus essentially argues that its objections are specific because they are being challenged.  This is nonsense, and it ignores the many cases where courts granted motions to compel responses over boilerplate objections.  *See* Defs.' Reply 20 n.6, ECF No. 122

---

[3] Circinus's objections are nearly identical to the ones lodged by Broidy in response to Defendants' discovery requests.  Accordingly, they fail for the same reasons discussed in Defendants' Cross-Motion to Compel 25–26, ECF No. 115, and Reply in Support of Defendants' Cross-Motion 20–24, ECF No. 122.

(collecting cases).  Even Circinus's sole authority on this point granted a motion to compel over boilerplate objections.  *See Convertino*, 565 F. Supp. 2d at 14 ("Convertino's responses to these document requests and his responses to all of Justice's other discovery requests are evasive, non-responsive, and generally inadequate.").

Circinus's citation to *Sabol v. Brooks*, 469 F. Supp. 2d 324, 329 (D. Md. 2006), an out-of-circuit authority that pre-dates the 2015 amendments to the Federal Rules, does not cut against a finding of waiver in this case.  Opp'n 11.  In fact, the court in *Sabol* found waiver because the responding party did not "particularize its objections . . . and instead used the boilerplate objections that this Court repeatedly has warned against."  469 F. Supp. 2d at 329.  It merely held that "***wholesale*** waiver would be unfair" and thus limited the production parameters for the request at issue.  *Id.* (emphasis added).  Here though, Movants' requests are not facially overbroad because they seek relevant, discoverable information limited in time and subject matter.  *See infra* Section IV.

In a footnote, Circinus attempts to distinguish all of Movants' waiver authorities on the grounds that those cases involved general objections served by parties, as opposed to specific objections served by nonparties.  Opp'n 12 n.4.  These distinctions make no difference.  Circinus served general boilerplate objections; it just copied-and-pasted them underneath every request.  *See Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 190–91 (D.D.C. 1998) (repeating "not reasonably calculated to lead to discovery of admissible evidence" is "of no more usefulness to the plaintiffs or to the Court than the objections lodged in the general objections section").  Additionally, Circinus's own authority recognizes that nonparties are "subject to the same obligations and scope of discovery under Rule 45 as if it were a party proceeding under Rule 34."  *Sabol*, 469 F. Supp. 2d at 328 (cited by Circinus at Opp'n 11); *see also In re Denture Cream Prods.*

*Liab. Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013) ("Discovery obtained from a nonparty pursuant to Rule 45 has 'the same scope as provided in Rule 26(b), thus promoting uniformity.'" (quoting Fed. R. Civ. P. 45(d), Advisory Committee Note to 1946 Amendment)).

In sum, Circinus waived its ability to object by relying exclusively on nonspecific, boilerplate language.

## IV.   CIRCINUS OFFERS NO VALID SUBSTANTIVE DEFENSE OF ITS BLANKET OBJECTIONS.

In addition to their procedural defects, Circinus's objections are substantively invalid because they fail to state a legal basis for declining to produce material in response to Movants' requests. Circinus responds to the vast majority of Stonington's requests—***and all of Howard's requests***—with blanket refusals to produce documents. For those few requests to which Circinus does agree to respond, it seeks to restrict unilaterally the content of its productions. Circinus's boilerplate objections are legally indefensible, and the arguments contained in Circinus's opposition fare no better.

### A.   Movants Are Entitled To Discovery Into Allegations Broidy Made in the FAC.

In resisting Stonington's and Howard's subpoenas, Circinus advances the same nonsensical theory Broidy has asserted in his own motions—namely, that the rules governing discovery entitle Defendants to inquire into only those issues that Broidy (or here, Circinus) deem "core" or "at the very heart of" Broidy's FAC. The case law offered by Circinus does nothing to support such a proposition.

Circinus claims that *Krieger v. Fadely*, 199 F.R.D. 10 (D.D.C. 2001), proves that Stonington and Howard are not entitled to probe allegations contained in Broidy's complaint. *See* Opp'n 14. But that case in no way endorses Circinus's bizarre theory. Instead, the decision simply reiterates that a plaintiff's discovery requests must be "relevant to the claim or defense of any

party." 199 F.R.D. at 13. *Krieger* does not inhibit a defendant from testing the veracity of allegations made in a complaint.

*Clyburn v. News World Commc'ns, Inc.*, 117 F.R.D. 1 (D.D.C. 1987), a decades-old magistrate judge order decided years before the relevance standard in Rule 26 was amended, is similarly misplaced. That decision rejected an attempt to ask a third-party deponent embarrassing questions about his "alleged social relations with women," *id.* at 1—something thoroughly irrelevant to the complaint's allegations. Here, Circinus is essentially Broidy's alter ego, and Movants' requests directly concern allegations made in the FAC.

Circinus next argues that Stonington's and Howard's requests are not proportional, citing *Oxbow Carbon & Minerals LLC v. Union Pacific Railroad Co.*, 322 F.R.D. 1 (D.D.C. 2017), for the proposition that the "[C]ourt must 'determine whether the issues at stake are at the very heart of the litigation,' and 'whether this discovery request goes to a central issue or a side one.'" *See* Opp'n 14 (quoting *Oxbow*, 322 F.R.D. at 8). Those factors are used to "determine whether the likely benefit outweighs the ***burden or expense*** of the requested discovery." *EEOC v. George Wash. Univ.*, No. 17-CV-1978, 2020 WL 3489478, at *4 (D.D.C. June 26, 2020) (emphasis added); *see also English v. Wash. Metro. Area Transit Auth.*, 323 F.R.D. 1, 17 n.13 (D.D.C. 2017) (noting the *Oxbow* factors gauge "proportionality"). Circinus has not asserted—and certainly has not demonstrated with the required affidavits or specific proof—a lack of proportionality grounded in "burden or expense." Instead, Circinus objected on the basis that Stonington's and Howard's requests were not "proportional to the needs of the case"—*i.e.*, the requests are not proportional ***because they are not relevant***. *See* Resps. to Stonington Requests Nos. 1–36; Resps. to Howard Requests Nos. 1–34. The *Oxbow* factors thus do not apply. *See English*, 323 F.R.D. at 17 n.13

(noting *Oxbow* factors did not apply where party resisting discovery argued relevance, not proportionality).

Even if they did, Circinus's selective quoting of a single factor from the court's decision in *Oxbow* does little to support its position. *Oxbow* makes clear that "no single factor is designed to outweigh the other factors." 322 F.R.D. at 6. And, importantly, Circinus is not even quoting *Oxbow* itself. The language Circinus relies on—that "the issues at stake are at the very heart of the litigation," *id.* at 8—comes ultimately from *Labrier v. State Farm Fire & Cas. Co.*, 314 F.R.D. 637, 643 (W.D. Mo. 2016). Two weeks after *Oxbow* was decided, the Eighth Circuit reversed and vacated the *Labrier* decision. *See In re State Farm Fire & Cas. Co.*, 872 F.3d 567 (8th Cir. 2017). Moreover, Circinus overlooks the fact that the *Oxbow* court **rejected** the argument that Circinus makes here, compelling production of a discovery request significantly broader than anything requested by Stonington or Howard. *See* 322 F.R.D. at 3 ("order[ing] Plaintiffs to produce all documents belonging to their CEO"). Circinus's attempt to selectively quote a single *Oxbow* factor and present it as a requirement that discovery be proportional is disingenuous.

Moreover, *Pietrangelo v. Refresh Club, Inc.*, cited by Circinus, *see* Opp'n 15 n.6, confirms that even "one word" in a complaint can "open a can of discovery worms," and that a "seasoned litigator such as Plaintiff ought to know better than to include such superfluous language in a complaint if he is not prepared to litigate it." No. 18-CV-1943, 2021 WL 1209300, at *9 & n.3 (D.D.C. Mar. 31, 2021).

At bottom, the topics identified by Stonington and Howard in their subpoenas to Circinus, *see* Mov. Mem. 13, all relate directly to allegations Broidy made in his complaint and will help Movants undermine Broidy's theory of the case. Circinus may not shield itself from Movants' legitimate inquiry.

Finally, Circinus argues that even if Stonington's and Howard's requests are valid, there is no justification for making them to ***Circinus*** as a third party.  As Circinus (which is represented by the same counsel as Broidy) is aware, Circinus is both owned and under the control of Broidy. Much of Broidy's conduct relevant to Movants' defenses—particularly his lobbying efforts on behalf of foreign entities—was undertaken through Circinus.  And documents in possession of Circinus are clearly relevant for confirming whether Broidy has suffered "business injury," as he alleges in the FAC.  FAC ¶ 258.  Simply put, the requests are proper.

### B.   Circinus Cannot Unilaterally Limit Its Responses To Information "Concerning The Hacking."

Circinus's attempt to limit its productions to materials "concerning the hacking" is yet another example of its efforts to frustrate Movants' ability to obtain legitimate discovery.  As an initial matter, Circinus has not produced ***anything*** subject even to this arbitrary limitation, and it has given no indication on when it plans to do so, notwithstanding the approaching discovery deadline.  But regardless, as Movants have explained, *see* Mov. Mem. 12–14, Circinus may not unilaterally restrict its responses to Movants' requests, which seek documents that are clearly relevant to the case.  Indeed, Broidy's FAC contains allegations relating to many issues that do not directly concern the hack, such as Broidy's public image, the veracity of the news articles written about his leaked emails, his business dealings, his alleged trade secrets, and his supposedly altruistic opposition to Qatar.  *See, e.g.*, FAC ¶¶ 8, 12, 27.  Stonington and Howard are entitled to discovery into each of these topics.  *See Pietrangelo*, 2021 WL 1209300, at *9 & n.3; *Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*, 242 F.R.D. 1, 6–7 (D.D.C. 2007).  In limiting its responses to materials "concerning the hacking," Circinus frustrates legitimate discovery into areas that Broidy himself has put at issue.

In defending its responses, Circinus now argues that there should be no controversy over its "concerning the hacking" restriction because it was Stonington—not Circinus—that chose to limit discovery in such a manner.  According to Circinus, "each of the requests to which Circinus so responded specifically requested documents 'regarding the hacking,'"[4] and thus "Circinus agreed to search for and produce exactly what Movants requested."  Opp'n 12–13.  For example, according to Circinus, Stonington Request No. 2 asked for "'[a]ll communications between You and any person regarding . . . the alleged hacking.'"  Opp'n 12 n.5.  In actuality, Request No. 2 asked for "All communications between You and any person regarding ***Defendants, the State of Qatar, the Kingdom of Saudi Arabia, or*** the alleged hacking, as well as any documents relating to such communications." (emphasis added).  Materials relating to the hack are thus only a subset of what Stonington asked for, as Circinus ultimately acknowledges.  *See* Opp'n 13.

Moreover, nowhere in its opposition is there any attempt by Circinus to address why it feels empowered to withhold materials relating to these other relevant categories.  Instead, Circinus offers more boilerplate—a single sentence stating that it plans to ignore these other categories of inquiry "on the ground that such discovery was irrelevant to any claim or valid defense and not proportional to the needs of this case."  Opp'n 13.  In doing so, Circinus avoids responding to Movants' Motion, which explained why such materials are both relevant and proportional.  Lacking any legal justification for its intransigence, Circinus should not be permitted to refuse Movants' valid requests.  The restrictions Circinus seeks to place on its productions should therefore be rejected.

---

[4] Stonington never used the term "regarding the hacking" but rather referred to the "alleged hacking"—a term it defined.

C.     __Circinus Cannot Refuse To Produce Documents Relating To Broidy's Illegal Activity.__

Circinus continues to resist Stonington's and Howard's request that Circinus produce materials relating to Broidy's foreign lobbying efforts, some of which were the subject of his criminal prosecution.  Circinus's primary theory in support appears to be that Stonington and Howard "fail to justify seeking discovery from *Circinus* about *Mr. Broidy's* purported undisclosed advocacy"—*i.e.*, that because Circinus is a third party, it need not respond to Movants' requests. Opp'n 16.  Circinus does not deny that it is owned and controlled by Broidy, nor does it contest that it is the entity through which Broidy undertook much of his lobbying efforts, or that Circinus's connection to the hacking was reported on by the media.  Thus, the distinction Circinus seeks to draw between itself and Broidy for purposes of the subpoenas is effectively meaningless.

Movants have offered numerous reasons why their subpoena requests are justified. Circinus fails to rebut any of them.

*First*, Circinus inexplicably denies that Broidy alleged that the articles at issue in this case "created a false and injurious image of him."  Opp'n 16.  Respectfully, Broidy's own FAC clearly alleges that the "conspiracy included the . . . distribution of curated batches of the illegally obtained data to the media in a manner calculated ***to create a false and injurious image of Mr. Broidy***."  FAC ¶ 33 (emphasis added); *see also id.* ¶¶ 8, 26, 255, 364 (alleging Movants "falsely and misleadingly connect[ed] Mr. Broidy to wrongdoing," "falsely associat[ed] him with illegal activity," and sought "to damage his image" through "false and misleading stories based on the hacked and stolen information").  Whether statements about Broidy's illegal conduct are false is a legitimate question.

*Second*, Circinus does not deny that materials that are part of an illegal activity are not entitled to trade secret protection.  *See, e.g.*, *Goodman v. Genworth Fin. Wealth Mgmt.*, 881 F.

Supp. 2d 347, 355 (E.D.N.Y. 2012). Instead, Circinus argues that discovery is improper because "[t]he trade secrets at issue do not relate to any purported undisclosed advocacy that Movants believe are disclosed in the leaked emails or otherwise." Opp'n 16. How Circinus—which purports to be independent from Broidy so as not to be obligated to respond to reasonable discovery—could possibly know the substance of the alleged trade secrets is difficult to say, particularly when Broidy himself has refused to produce *any* evidence of trade secrets or even any description of what the purported "trade secrets" concern. But assuming allegations of trade secret theft were made in good faith and that Broidy will actually participate in discovery, the documents he produces will reveal whether Circinus is correct in that assertion. "Take our word for it" is not a valid justification for declining to respond to a subpoena.

*Third*, Circinus claims that as a nonparty it cannot possess information relevant to Movants' unclean hands defense. Again, Circinus is owned and controlled by Broidy and apparently knows his trade secrets—that it is a third party is irrelevant for purposes of these requests. Moreover, the illegal nature of Broidy's activity that was exposed by the alleged hack—including but not limited to his acting as an unregistered yet paid agent of the UAE hired to attack Qatar—bears directly on Defendants' claim that this litigation was brought in bad faith, which even Broidy has recognized as a valid basis both for the defense and for discovery. Pls.' Opp'n to Mot. to Compel 17, ECF No. 120 (citing *Pietrangelo*, 2021 WL 1209300, at *10).

*Fourth*, Circinus does not deny that Movants are entitled to discovery regarding Broidy's credibility. *See* Opp'n 18. Instead, they once again fall back on the irrelevant fact that Circinus is a third party. As Movants have explained, Broidy engaged in the foreign lobbying at issue through Circinus.

*Fifth*, Circinus is simply wrong when it states that this Court "expressly rejected" Howard's First Amendment defense. *See* Defs.' P.O. Opp'n 31–34, ECF No. 121. In any event, taking discovery to show that the leaked emails implicate matters of "public importance" —because, for among other reasons, they demonstrate Broidy's efforts to corrupt American democracy—would strongly support Howard's defense. *Bartnicki v. Vopper*, 532 U.S. 514 (2001). It is hardly an "abuse of discovery," Opp'n 18, to request such information.

*Sixth*, Circinus has no meaningful response to Movants' argument that the requests will help demonstrate who was responsible for the hack. Instead, Circinus reassures the Court that "Movants do not need to speculate" because "[t]he Complaint sets forth detailed allegations concerning Defendants and their co-conspirators' responsibility for the hack." Opp'n 19. Circinus thus, once again, would have Movants simply trust the allegations set forth in the FAC.

*Seventh*, Circinus argues that Movants are not entitled to discovery into Broidy's improper motives for bringing his lawsuit because there is "*no evidence*" indicating that Broidy had improper motives. Opp'n 19. Leaving aside the fact that there **is** plenty of evidence that Broidy had an incentive to use litigation to attack Defendants, Circinus seems to misunderstand the very purpose of discovery: to collect evidence. Movants served their requests on Circinus for precisely this reason.

### D.  <u>Stonington and Howard Are Entitled To Discovery Into Broidy's Damages.</u>

As Stonington and Howard explained in their Motion, Broidy alleges that his damages include, among other things, loss of business, loss of consumer goodwill, and harm to Broidy's reputation and public image. *See* Mov. Mem. 19–20 (citing FAC ¶¶ 33, 26, 255, 272, 286, 303, 317, 328, 364, 374). Stonington and Howard are unquestionably entitled to discovery into these

topics, which Broidy himself put at issue in the FAC.[5]  *See* 8 Charles Alan Wright et al., *Federal Practice & Procedure* § 2008.4 (2021); *Nat'l Cmty. Reinvestment Coalition v. NovaStar Fin., Inc.*, No. 07-861, 2009 WL 10719757, at *2 (D.D.C. July 13, 2009).  The documents Stonington and Howard request—which include evidence of business transactions—are relevant to Broidy's asserted damages.

In refusing to comply with Movants' subpoena requests, Circinus argues that Stonington and Howard are not permitted to "verify[] *Plaintiffs'* damages" because damages are something "Plaintiffs must prove."  Opp'n 20.  Circinus apparently suggests, as Broidy has elsewhere, that a defendant is not permitted to use discovery to challenge a plaintiff's theory of damages.  It is unsurprising that Circinus cites no authority to support that proposition because none exists.  Indeed, Rule 26(a)(1)(A) demands the opposite, requiring each party claiming damages to disclose "a computation of each category of damages claimed"—as well as documents and other materials "bearing on the nature and extent" of injuries allegedly suffered—before discovery is commenced to allow discovery regarding damages to proceed efficiently.  Reputational damages, loss of business, and financial harm are integral components of Broidy's case, and it defies reason to argue that they are somehow exempt from discovery.[6]

---

[5] Circinus does not explain why it would be "logically unsound" for Movants to believe that Circinus possesses documents responsive to their requests.  Opp'n 20 n.10.  Indeed, if Circinus does not possess such documents, it is unclear why it continues to oppose Movants' requests, wasting this Court's time and resources in the process.

[6] Circinus's offhanded suggestion that this Court sanction Stonington and Howard for suggesting that discovery may yield evidence of illegal conduct warrants no serious response other than to note, once again, that Broidy is a convicted felon who recently pleaded guilty to violating the Foreign Agents Registration Act of 1938, 22 U.S.C. § 611 *et seq.*, a violation that is clearly relevant to this case.  *See* Hr'g Tr. 80, *United States v. Broidy*, 1:20-cr-210 (D.D.C. Oct. 23, 2020), ECF No. 13.

### E.   **Circinus Cannot Justify Its Refusal To Produce Documents Predating December 2017.**

Finally, Circinus argues that it should be able to avoid discovery into matters before December 1, 2017.  In its opposition, Circinus more or less concedes that "it did not explain the basis for that time limitation in its responses."  Opp'n 21.  That alone is grounds for rejecting Circinus's attempt to disregard Movants' requests.  But even if it were not, Circinus offers no justification for the unilateral and illogical temporal boundary it seeks to erect.

As Stonington and Howard have explained, the materials at the center of this case—hacked emails—were all created before December 1, 2017.  Defendants are entitled to probe the nature of these communications, particularly given that Broidy's case is premised, in part, on reputational harm and harm to his business relations.  Defendants cannot challenge Broidy's allegations in this regard unless they are able to evaluate the veracity of the leaked emails—and the context in which they were sent—and assess the state of Broidy's reputation ***before*** the hack.

Indeed, lest there were any doubt, it is clear that materials from before December 1, 2017, are relevant ***because Broidy himself has said that they are relevant***.  For example, Broidy conceded that his advocacy work over the past "***two decades***" provides "relevant context" for this case.  Pls.' Reply Mem. Supp. Mot. Recons. 17 n.15, ECF No. 110 (emphasis added).  And Broidy's counsel—the same counsel for Circinus—has requested documents predating Circinus's proposed December 1, 2017 cutoff.

Moreover, Circinus's argument that any documents predating December 1, 2017, are not relevant because they predate the hack requires Defendants to assume that the hack occurred when Broidy claims it occurred.  The parties have not stipulated to this fact—far from it.  The very nature of the hack, and whether it occurred at all, remains a central dispute in this litigation.

Broidy's pre-2017 conduct is thus undoubtedly relevant.   Stonington's and Howard's requests for documents extending back to January 1, 2016, are therefore reasonable and should be enforced.

## **CONCLUSION**

For the foregoing reasons, Movants respectfully request that the Court grant the Motion to Compel, award Movants their reasonable expenses and attorneys' fees they incurred in making their motion, and grant such other relief as appropriate.

Dated: March 23, 2022                         Respectfully Submitted,

                                              /s/ Stephen J. Obermeier
Charles S. Fax                                Stephen J. Obermeier (D.C. Bar # 979667)
RIFKIN WEINER LIVINGSTON LLC                  sobermeier@wiley.law
7979 Old Georgetown Road, Suite 400           Rebecca Fiebig (D.C. Bar # 976854)
Bethesda, MD 20814                            rfiebig@wiley.law
cfax@rwlls.com                                Enbar Toledano (D.C. Bar # 1030939)
                                              etoledano@wiley.law
Liesel J. Schopler                            Krystal B. Swendsboe (D.C. Bar # 1552259)
RIFKIN WEINER LIVINGSTON LLC                  kswendsboe@wiley.law
225 Duke Of Gloucester Street                 WILEY REIN LLP
Annapolis, MD 21401                           2050 M Street NW
lschopler@rwlls.com                           Washington, DC 20036
                                              Phone: (202) 719-7000
Jeffrey A. Udell                              Facsimile: (202) 719-7049
Adam P. Cohen
Jacob Gardener                                *Counsel for Defendants Stonington Strategies*
WALDEN MACHT & HARAN LLP                      *LLC and Nicolas D. Muzin*
250 Vesey Street, 27th Floor
New York, NY 10281
judell@wmhlaw.com
acohen@wmhlaw.com
jgardener@wmhlaw.com

*Counsel for Defendant Gregory Howard*